No. 25-4006

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

*v.*

BRIAN PATRICK WERTH,

*Defendant - Appellant.*

On Appeal from the United States District Court
for the District of Maryland, No. 21-cr-00362-TDC (Chuang, J.)

## OPENING BRIEF FOR APPELLANT BRIAN WERTH

JAMES WYDA
CLAIRE MADILL
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
Claire_Madill@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

JURISDICTION................................................................................................... 4

ISSUES PRESENTED.......................................................................................... 4

STATEMENT ...................................................................................................... 5

    A.    Trial ...................................................................................... 5

    B.    Sentencing ............................................................................ 9

SUMMARY OF ARGUMENT ........................................................................... 13

ARGUMENT ...................................................................................................... 16

I.    WERTH WAS ENTITLED TO A JUDGMENT OF ACQUITTAL ON COUNT 3 .............. 16

    A.    Standard of Review ............................................................. 16

    B.    The Government had to prove that Werth enticed the
           complaining witness to engage in sexually explicit
           activity for the purpose of producing an image. ................. 17

    C.    The Government failed to present sufficient evidence on
           Count 3. .............................................................................. 22

II.    THE DISTRICT COURT IMPERMISSIBLY PUNISHED WERTH FOR EXERCISING
    HIS CONSTITUTIONAL RIGHTS. ........................................................... 29

    A.    District courts cannot appear to rely on impermissible
           factors at sentencing. .......................................................... 29

    B.    Increasing a sentence due to the defendant's failure to
           take responsibility or express remorse is unconstitutional.................. 32

C. The district court's comments here about Werth's decision to maintain his innocence, failure to accept responsibility, and failure to show remorse violated his constitutional rights. ............................................................36

D. This error requires resentencing before a different judge, regardless of the appropriate standard of review. ...............................40

III. WERTH IS ENTITLED TO RESENTENCING DUE TO ERRORS IN THE SUPERVISED RELEASE CONDITIONS....................................................................42

A. The district court erred in including supervised release conditions in the written judgment that were not orally pronounced. ...........................................................................................43

B. The district court erred in banning Werth from all use of alcohol. ...............................................................................................45

CONCLUSION .........................................................................................................49

REQUEST FOR ORAL ARGUMENT .................................................................50

CERTIFICATE OF COMPLIANCE ......................................................................51

# TABLE OF AUTHORITIES

## Cases

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)......................................................32

*Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868 (2009).......................................31

*Coles v. United States*, 682 A.2d 167 (D.C. 1996).................................................36

*Duncan v. Louisiana*, 391 U.S. 145 (1968) ............................................................39

*Glenn v. United States*, 271 F.2d 880 (6th Cir. 1959) ...........................................27

*Holton v. State*, 573 So.2d 284 (Fla. 1990).............................................................38

*Longval v. Meachum*, 693 F.2d 236 (1st Cir. 1982) ........................................ 31, 42

*Moorer v. State*, 926 So.2d 475 (Fla. App. Ct. 2006).....................................  33, 36

*North Carolina v. Pearce*, 395 U.S. 711 (1969).............................................. 32, 41

*Rogers v. United States*, 596 F. App'x 490 (7th Cir. 2014) .................................20

*Scott v. United States*, 419 F.2d 264 (D.C. 1969).................................................36

*State v. Noble*, 2015 WL 758905 (Ohio Ct. App. Feb. 23, 2015) .........................33

*State v. Scalf*, 710 N.E.2d 1206 (Ohio Ct. App. 1998).................................... 31, 35

*United States v. Alvarez*, 880 F.3d 236 (5th Cir. 2018)........................................48

*United States v. Aplicano-Oyuela*, 792 F.3d 416 (4th Cir. 2015)........................30

*United States v. Araujo*, 539 F.2d 287 (2d Cir. 1976)..........................................35

*United States v. Avila*, 134 F.4th 244 (4th Cir. 2025) ........................ 20, 21, 22, 23

*United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991)...................... 30, 31, 40, 42

*United States v. Barrett*, 102 F.4th 60 (2d Cir. 2024) ...........................................16

*United States v. Belk*, No. 20-4551, 2022 WL 17849372 (4th Cir. Dec. 22, 2022) ................................................................................................28

*United States v. Bonner*, 648 F.3d 209 (4th Cir. 2011) ...........................................17

*United States v. Boulware*, 604 F.3d 832 (4th Cir. 2010) ........................................40

*United States v. Broxmeyer*, 616 F.3d 120 (2d Cir. 2010).............................. passim

*United States v. Bryce*, 208 F.3d 346 (2d Cir. 1999)..............................................29

*United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001)............................. 21, 22, 25

*United States v. Burnette*, 518 F.3d 942 (8th Cir. 2008) ........................................30

*United States v. Cabrera*, 811 F.3d 801 (6th Cir. 2016) ........................... 30, 40, 41

*United States v. Carpenter*, 996 F.2d 1213 (4th Cir. 1993) ...................................35

*United States v. Cesiro*, No. 23-6649, 2024 WL 4647667 (2d Cir. Nov. 1, 2024)
...........................................................................................................................18

*United States v. Cisson*, 33 F.4th 185 (4th Cir. 2022)............................................43

*United States v. Dean*, 55 F.3d 640 (D.C. Cir. 1995)............................................29

*United States v. Diamond*, 561 F.2d 557 (4th Cir. 1977) ......................................42

*United States v. Dodt*, No. 20-4115, 2021 WL 6118162 (4th Cir. Dec. 27, 2021)
...........................................................................................................................29

*United States v. Eddy*, 597 F.2d 430 (5th Cir. 1979), *abrogation on other grounds
suggested in Gibson v. Collins*, 947 F.2d 780 (5th Cir. 1991)...........................26

*United States v. Fowler*, 948 F.3d 663 (4th Cir. 2010) ..........................................30

*United States v. Frost*, 914 F.2d 756 (6th Cir. 1990) .............................................38

*United States v. Fuller*, 77 F. App'x 371 (6th Cir. 2003)........................................24

*United States v. Grant*, No. 21-4344, 2021 WL 5412343 (4th Cir. Nov. 19, 2021)
...........................................................................................................................30

*United States v. Hernandez*, 894 F.3d 1104 (9th Cir. 2018) ............................ 32, 33

*United States v. Herndon*, 807 F. App'x 286 (5th Cir. 2020) .................................49

*United States v. Hickman*, 626 F.3d 756 (4th Cir. 2010).......................................28

*United States v. Hopkins*, 464 F.2d 816 (D.C. Cir. 1972) ........................................33

*United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012)............................. 45, 47, 48

*United States v. Jackson*, 390 U.S. 570 (1968)........................................................32

*United States v. Johnson*, 600 F. App'x 872 (4th Cir. 2015) ................................17

*United States v. Kemache-Webster*, 497 F. App'x 339 (4th Cir. 2012) .......... 18, 24

*United States v. Kent*, 93 F.4th 1213 (11th Cir. 2024) ...........................................26

*United States v. Kincherlow*, 88 F.4th 897 (11th Cir. 2023) ..................................18

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ................................................31

*United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020)........................................41

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010) ..............................................40

*United States v. Maples*, 501 F.2d 985 (4th Cir. 1974) ..........................................30

*United States v. Mathis*, 103 F.4th 193 (4th Cir. 2024).........................................43

*United States v. Maxwell*, 483 F. App'x 233 (6th Cir. 2012)..................................49

*United States v. McCall*, 934 F.3d 380 (4th Cir. 2019) .................................... 31, 42

*United States v. Mikalajunas*, 974 F.2d 1333 (4th Cir. 1992) ......................... 31, 42

*United States v. Modena*, 302 F.3d 626 (6th Cir. 2002) ................................... 46, 47

*United States v. O'Connor*, 567 F.3d 395 (8th Cir. 2009)......................................30

*United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015)......... 17, 20, 23

*United States v. Pennington*, No. 21-4664, 2022 WL 2702577 (4th Cir. July 12, 2022)..........................................................................................................41

*United States v. Perazza-Mercado*, 553 F.3d 65 (1st Cir. 2009).................... 46, 48

*United States v. Perez*, No. 24-1492, 2025 WL 545706 (3d Cir. Feb. 19, 2025)....41

*United States v. Powell*, 650 F.3d 388 (4th Cir. 2011).............................................40

*United States v. Prendergast*, 979 F.2d 1289 (8th Cir. 1992) ......................... 46, 47

*United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005) ...........................................46

*United States v. Reed*, 421 F. App'x 113 (2d Cir. 2011).........................................49

*United States v. Reyes*, No. 23-4598, 2024 WL 4381162 (4th Cir. Oct. 3, 2024) ............................................................................................... 3, 43, 45

*United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020).......................... 3, 15, 43, 44

*United States v. Saunders*, 973 F.2d 1354 (7th Cir. 1992) .....................................32

*United States v. Scherrer*, 444 F.3d 91 (1st Cir. 2006) ..........................................47

*United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021).....................................43

*United States v. Stratton*, 820 F.2d 562 (2d Cir. 1987) .........................................35

*United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014) .....................................28

*United States v. Thomas*, 410 F.3d 1235 (10th Cir. 2005) .....................................18

*United States v. Thomas*, 489 F. App'x 688 (4th Cir. 2012) ..................................28

*United States v. Thompson*, 509 F. App'x 449 (6th Cir. 2012) ..............................49

*United States v. Trujillo*, 906 F.2d 1456 (10th Cir. 1990).....................................35

*United States v. Varela-Rivera*, No. 23-50298, 2024 WL 2130595 (5th Cir. May 13, 2024).............................................................................................................47

*United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017) ........................................29

*United States v. Watkins*, 111 F.4th 300 (4th Cir. 2024) .......................................17

*United States v. Wesley*, 81 F.3d 482 (4th Cir. 1996)...................................... 46, 47

*United States v. Whitson*, 77 F.4th 452 (6th Cir. 2023).................................. passim

*United States v. Williams*, 89 F.3d 165 (4th Cir. 1996)................................... 28, 29

*United States v. Yuvavanich*, 64 F. App'x 49 (9th Cir. 2003) ................................47

*Williams v. United States*, 293 A.2d 484 (D.C. 1972)............................................33

## Statutes

18 U.S.C. § 2251 ............................................................ passim

18 U.S.C. § 2260A ..............................................................6, 10

18 U.S.C. § 2422 ............................................................ passim

18 U.S.C. § 2427 ...................................................................19

18 U.S.C. § 3231 ....................................................................4

18 U.S.C. § 3553 ............................................... 40, 41, 46, 48

18 U.S.C. § 3563 ...................................................................45

18 U.S.C. § 3583 ...................................................................46

18 U.S.C. § 3742 ....................................................................4

18 U.S.C. § 2252 ....................................................................6

18 U.S.C. § 2252A ...............................................................6

## U.S. Sentencing Guidelines

U.S.S.G. § 3E1.1 ........................................................... 34, 37

U.S.S.G. § 5D1.3 ...................................................................44

## Rules

Fed. R. App. P. 4 ....................................................................4

Fed. R. Evid. 801 ...................................................................8

## Other Authorities

*Engage*, Black's Law Dictionary (12th ed. 2024) .................................25

## INTRODUCTION

This is a direct appeal from a criminal conviction following a jury trial.

The Government discovered that Defendant-Appellant Brian Werth was engaging in inappropriate conversations with minors online and had sexually explicit photographs or videos of them. Instead of charging Werth with mere possession or distribution of child pornography, the Government decided to pursue child pornography *production* charges. This required the Government to prove that Werth's discussions with the complainants prompted them to engage in sexual activity for the purpose of producing an explicit image or video.

Werth exercised his constitutional right to a jury trial. His defense was, essentially, that the Government had overcharged him. Yes, he may have had inappropriate conversations with the complainants and possessed photographs or videos of them, but Werth argued that the Government failed to prove that he actually enticed any of the complainants to create (*i.e.*, produce) new explicit content. The jury found Werth guilty as charged.

Werth was sentenced to 37 years' imprisonment, followed by 25 years' of supervised release. At sentencing, the district court repeatedly chastised Werth for maintaining his innocence, failing to "take responsibility," and failing to "show remorse." For example, the court lamented that "Mr. Werth has shown absolutely no acceptance of responsibility or remorse" and that he "still maintains his

innocence." The court did so even though Werth, during his allocution, did express remorse, insofar as he noted his "negative behaviors" but expressed his desire "to make amends."

This Court should reverse and remand for resentencing for three separate reasons.

First, the district court erred in denying Werth's judgment of acquittal motion as to Count III. To prove that count, the Government had to show that Werth coerced or enticed the complaining witness (E.A.D.) to engage in sexually explicit conduct for the purpose of producing a visual depiction, like a photograph or video. The evidence at trial failed to prove this. The complaining witness did not testify, and thus there was no direct evidence that she ever engaged in (or agreed to engage in) sexually explicit conduct in response to Werth's discussions with her. While the Government introduced some chats between Werth and E.A.D., those did not prove the coercion or enticement count either, because they contained no evidence indicating that E.A.D. ever actually engaged in (or even agreed to engage in) sexually explicit conduct for the purpose of producing photographs or videos for Werth, or that she, in fact, produced any such materials—let alone sent them to Werth. While there were photographs of E.A.D. on Werth's computer, the Government presented no evidence about how, when, or why those were sent, and

thus no evidence that those specific photographs were in fact produced as a result of Werth's actions.

Second, the Court should reverse and remand for resentencing because the district court impermissibly punished Werth for exercising his constitutional rights. Although a court can *decrease* a sentence because a defendant has shown remorse and accepted responsibility, a court runs afoul of the Constitution where it increases a sentence due to the failure to show remorse or accept responsibility. Such reasoning punishes a defendant for exercising his constitutional right to a trial and his privilege against self-incrimination. Here, when imposing and explaining its sentence, the district court repeatedly castigated Werth for maintaining his innocence, failing to accept responsibility, and failing to show remorse—effectively punishing Werth for exercising his Fifth and Sixth Amendment rights. The consideration of an improper sentencing factor such as this requires resentencing before a different judge.

Finally, Werth is entitled to a resentencing due to various errors in the supervised release conditions. When there is a discrepancy between the conditions the district court orally pronounced and the conditions that appear in the written judgment, resentencing is required. *United States v. Reyes*, No. 23-4598, 2024 WL 4381162, at *1 (4th Cir. Oct. 3, 2024) (citing *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020)). Here, for two conditions (related to a $400 special assessment and

where Werth must report upon release), the oral pronouncement and written judgment do not match. Additionally, any non-standard condition imposed must be reasonably related to the case. Here, the district court erred when it, without giving any explanation, imposed a total ban on all alcohol use where there was no evidence that alcohol played any role in the underlying offenses or that Werth suffered from any particular problem with alcohol.

For these reasons, the Court should reverse and remand for resentencing before a different judge.

## JURISDICTION

The district court, which had jurisdiction under 18 U.S.C. § 3231, entered final judgment on December 19, 2024. Werth timely appealed 11 days later. J.A.775; *see* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court erred in denying Werth's motion for judgment of acquittal on Count III, where the Government failed to present sufficient evidence that Werth's alleged coercion or enticement actually resulted in the complainant's production, or agreement to produce, a sexually explicit photograph?

2. Whether the district court violated Werth's constitutional rights by increasing the sentence due to Werth's maintaining of his innocence, failure to take responsibility, and failure to express remorse in the way the district court wanted?

3.  Whether the district court erred in imposing supervised release conditions in the written judgment that either conflicted with the oral sentencing pronouncement or were not supported by the record?

## STATEMENT

### A.    Trial

The Charges: Via superseding indictment, Werth was charged with four counts. J.A.18-21.  All four counts stemmed from his alleged enticement of minors that he met online to provide him with sexually explicit photographs or videos.  In Counts 1 and 2, Werth was charged with production of child pornography in violation of 18 U.S.C. § 2251(a), with each count pertaining to a different complainant (J.B. and L.W., respectively).  J.A.18-20, 587-88.

Count 3, which is particularly relevant in this appeal, charged Werth with coercion and enticing a third complainant ("E.A.D." or "E.") to engage in illegal sexual activity, namely, the production of child pornography.  In full, the superseding indictment alleged, in Count 3, that Werth:

> using any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual who had not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, namely, production of child pornography, in violation of 18 U.S.C. § 2251(a).

18 U.S.C. § 2422(b)

J.A.20.   Although the superseding indictment does not specifically name the complainant, at trial, the Government made clear that Count 3 related to Werth's

interactions with E.A.D.  *See* J.A.625, 629, 633.[1]

The three main counts all stemmed from inappropriate chat conversations Werth had with three minors online.  Via online platforms like Snapchat and Kik, Werth connected with J.B., L.W., and E.A.D.  *See* J.A.356-57, 474-75.  Records from the online platforms showed that Werth had sexually explicit photographs and/or videos of all three individuals.  *E.g.*, J.A.416, 451-52, 475-76.  But the Government did not charge Werth with merely <u>possessing</u> or <u>distributing</u> child pornography.  *E.g.*, 18 U.S.C. §§ 2252, 2252A.  Rather, the Government charged Werth with *production*: he was charged with persuading a minor to *produce* child pornography (Counts 1-2) and coercing or enticing a minor to *produce* child pornography (Count 3).  J.A.18-20.  Accordingly, to prove their case, the Government had to show that Werth's persuasion or enticement actually caused the three complainants to engage in sexually explicit activity for the purpose of producing a visual depiction, like a photograph or video.  *See infra* Point I.B.

<u>The Trial:</u>  Werth proceeded to trial, at which his defense was that there was insufficient evidence he actually enticed the production of child pornography.  He

---

[1] Count 4 charged Werth with being a registered sex offender who committed a specified felony offense involving a minor.  J.A.21.  (Werth had a prior Maryland conviction for a sexual offense in the fourth degree.  J.A.25, 798.)  The offenses charged in the first three counts constituted qualifying felonies for purpose of this charge.  J.A.627-28; *see also* 18 U.S.C. § 2260A.

admitted that his conversations with the three complainants were inappropriate and that the chats contained sexually explicit depictions of the three individuals. J.A.276-77, 630. But he argued that the Government failed to prove beyond a reasonable doubt "that he made those girls produce" images or videos. J.A.630. Werth argued the evidence showed that the complainants largely sent the images unprompted or that the images were produced for other people (not Werth), and thus that there was insufficient evidence that he induced or enticed the production of child pornography. J.A.630-33, 635.

This appeal raises the sufficiency of the evidence as to Count 3, so it is worth examining the Government's evidence on this count in some depth. E.A.D.—the complainant in Count 3—did not testify at trial. J.A.633; *see* J.A.234, 315, 539.[2] Accordingly, she did not testify at trial that she actually produced any photographs specifically for Werth or that his alleged coercion or enticement caused her to take any new photographs. The only evidence the Government had on Count 3 was the chat messages between E.A.D. and Werth. J.A.450-46, 777-88. To get around Werth's hearsay objection,[3] the messages from E.A.D. to Werth were not admitted for the truth of the matter asserted. J.A.107-08, 114, 154, 160-62, 174-77, 437, 525,

---

[2] The Government was only able to prove her identity and age by submitting her birth certificate (J.A.517-18, 546) and having an agent who interviewed her identify her in a photograph (J.A.559-60).

[3] *See* J.A.91-92.

575.  (In contrast, Werth's messages were admissible for their truth as a party-opponent admission.  *See* Fed. R. Evid. 801(d)(2).)

Many of the messages between E.A.D. and Werth were mundane and not explicit.  For example, they said "hello" to each other and Werth complained about work.  But the conversation did become explicit at some points.  J.A.450-51, 781.  Werth asked E.A.D. if she had any "new" explicit photographs, to which she said "no."  J.A.451, 781.  In addition to this exchange, Werth told and showed E.A.D. that he had a folder on his computer containing two sexually explicit photographs of her.  J.A.451-52, 781, 789.  After the two talked and joked about the folder a bit, Werth asked E.A.D. to "hook [him] up the next time [she] t[ook] nude pics[.]"  J.A. 452-53, 782.  There was no evidence that E.A.D. actually sent Werth any additional explicit photographs after this exchange, let alone that she produced such images in response to his request (*see* J.A.450-58, 777-88); to the contrary, she rebuffed his subsequent request for photographs (J.A.453, 782).  Later in the conversation, Werth asked if E.A.D. wanted to get on a call with him, which she declined.  J.A.455, 783.  He suggested that they "cum on cam" the next time she was alone.  J.A.455, 783.  There was no evidence that this video meeting ever occurred, let alone that it involved sexually explicit conduct.  *See* J.A.450-58, 777-88.

Werth moved for a judgment of acquittal on all four counts and later renewed the motion.  J.A.566, 605.  The motions were ultimately denied.  J.A.566, 607.

The jury found Werth guilty as charged.  J.A.653-54, 661-62.

**B.      Sentencing**

 Sentencing Arguments:  As is common in these child pornography cases, the Guidelines range was life, even though Werth had minimal criminal history. J.A.798, 808.  The parties disputed whether the applicable mandatory minimum was 15 or 25 years of imprisonment.  *See* J.A.664-70, 683-92, 702-06, 825-39.[4]  The Government requested a 70-year prison sentence plus lifetime supervised release. J.A.670.  Werth requested a 25-year prison sentence plus 25 years of supervised release.  J.A.839.  To support his request, Werth pointed out that, although his crimes of conviction were serious, they were not "hands-on" offenses, *i.e.*, they did not involve physical interaction with or touching of the complaining witnesses.  J.A.682, 720, 839-40.  He pointed to cases involving worse conduct (*i.e.*, cases of production involving hands-on and in-person interaction) where the defendant received sentences *less* than the Government's request in this case.   J.A.682, 839-40. Additionally, he noted that he would be over the age of 60 by the time of his release, thus reducing the likelihood of recidivism.  J.A.722.

At sentencing, Werth allocuted.  J.A.741-43.  Among other things, Werth discussed how, through programming and therapy, he had recognized his

---

[4] The debate centered around whether Werth's Maryland conviction qualified as a prior "relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward."  18 U.S.C. § 2251(e).

"underlying triggers in [his] life" and that he had an "addiction" and "a disease." J.A.742. He noted that he had "rationalized all of [his] negative behaviors" and "had an excuse for everything," but that he was now "working on living [his] action plan" and "desperately hope[d] to make amends." J.A.742. He stated that he wanted to "try to make amends through [his] assistance and kindness to others." J.A.742.

The Term of Imprisonment: The district court imposed a sentence of 37 years' imprisonment. J.A.749-50, 768.[5] The court agreed with the Government's view of the applicable mandatory minimum (J.A.705), but also stated that it would have imposed the same sentence regardless of the appropriate minimum (J.A.749).

When providing the required explanation for the sentence, the district court repeatedly chastised Werth for his supposed failure to take responsibility/failure to show remorse and for deciding to maintain his innocence. For example, when discussing the appropriateness of a particular supervised release condition, the district court called Werth "[s]omeone who's never accepted responsibility for anything." J.A. 728. The district court repeatedly hammered these same concerns throughout sentencing, stating:

> **Mr. Werth has shown absolutely no acceptance of responsibility or remorse**[.]

---

[5] Specifically, the Judge sentenced Werth to 27 years of imprisonment on Counts 1 to 3 to run concurrently, followed by a 10-year sentence on Count 4 to run consecutively. J.A.768. The 10-year consecutive prison sentence was mandated by statute. 18 U.S.C. § 2260A.

. . .

The defense even went so far as to object to the presentence report's failure to state that **Mr. Werth still maintains his innocence**, even though there was certainly no need for that kind of a submission.

. . .

But **there was overwhelming evidence of guilt** at trial and in the jury verdict. And even in the statement we just heard, Mr. Werth spent a lot of time talking about himself and how this is a problem for him. Even without admitting guilt, he certainly could have expressed some sympathy or some consciousness of what the victims, including the one who testified at trial, have gone through.

. . .

And the fact that he even today has an utter lack of any conception that there were people who were harmed in this case, regardless of who is responsible, and not even expressing any -- not even acknowledging them, frankly -- is really galling.

J.A.747-48 (emphases added). And the judge mentioned this issue yet again when discussing supervised release. J.A.751. ("[H]e's shown no acceptance of responsibility at all."). The district court ended its sentencing pronouncement with the same theme, stating: "I hope you will be able to get the help you need to stay away from this kind of activity in the future, that you can at some point come to recognize the harm you did and **perhaps have some remorse for it, which so far you haven't displayed at all**." J.A.757-58 (emphasis added).

Supervised Release: The district court also sentenced Werth to 25 years' of supervised release. J.A.750, 769. When pronouncing the conditions of supervised release, the district court stated it would "incorporate the language on Pages 27 and 28 of the presentence report for the . . . mandatory and standard conditions." J.A.753-54; *see also* J.A.816-18 (portion of PSR containing recommended

conditions).  The judge proffered no explanation for any of the non-standard conditions.  J.A.753-57.

Three of the non-standard supervised release conditions are relevant to this appeal.

1.  The district court orally announced that Werth would have to pay a mandatory special assessment of $400.  J.A.750.  The court announced this assessment immediately after listing the term of imprisonment, not when discussing supervised release conditions.  J.A.749-50.  However, the written judgment lists the $400 special assessment as a condition of supervision.  J.A.772.

2.  The next condition relates to where Werth must report upon release.  The PSR recommended the following condition of supervision:

> You must report to the probation office in the federal judicial <u>district where you are authorized to reside</u> within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

J.A.816 (emphasis added).  The written judgment includes that language, but also requires Werth to "report to the probation office in the <u>district to which the defendant is released</u> within 72 hours of release from the custody of the Bureau of Prisons." J.A.769 (emphasis added).

3.  The final term relates to alcohol consumption.  The PSR recommended the following condition: "You must not use or possess alcohol."  J.A.817.  The written judgment includes that term.  J.A.770.

No evidence exists that alcohol played any role in the alleged offenses.  And no evidence exists that Werth suffered from an alcohol problem.  The PSR reported that Werth "consumed alcohol in eight [*sic*] grade and has consumed alcohol socially as an adult."  J.A.805.  Werth stated that "he tried to be careful with his alcohol consumption because he knows he is prone to addiction."[6]  J.A.805.  His mother confirmed his limited alcohol use, stating that Werth "consumes alcohol rarely in social situations."  J.A.805.  The last time Werth had consumed alcohol was 2021, before his incarceration.  J.A.805.

## SUMMARY OF ARGUMENT

Werth is entitled to resentencing for three different reasons.

I.    The district court erred in denying Werth's motion for judgment of acquittal as to Count III.  Given the way that the Government charged Werth in Count III, it had to prove that Werth's coercion or enticement actually caused the complainant to engage in sexually explicit activity for the purpose of producing of producing child pornography.  The mere existence of a sexually explicit photograph of a minor, without more, does not prove production, as it does not provide evidence that the defendant's actions induced the creation of the explicit photograph.  *United States v. Broxmeyer*, 616 F.3d 120, 125-26 (2d Cir. 2010).  Here, the Government

---

[6] This appears to be a reference to addiction to child pornography, not alcoholism or drugs.  *See* J.A.725, 741-42.

present no evidence that Werth's supposed coercion and enticement actually led E.A.D. to engage in sexually explicit activity to produce a visual depiction. E.A.D. did not testify at trial. So, the Government's only evidence on this count was the limited chats between Werth and E.A.D. In those chats, E.A.D. does not actually send Werth any sexually explicit images or videos. And, while Werth had preexisting photographs of E.A.D. already on his computer, the Government presented zero evidence of how those photographs came to fruition, *i.e.*, whether it was Werth's enticement that led E.A.D. to produce those images or rather whether those images already existed before Werth started to talk to E.A.D. or were created for reasons unrelated to Werth's conversations with E.A.D. Without that temporal evidence, the evidence on Count III was insufficient.

II.      The Court should also reverse and remand for resentencing before a different judge because the record reflects that the district court impermissibly aggravated Werth's sentence because Werth exercised his constitutional rights. At sentencing, while a district court may permissibly express *leniency* to a defendant who took responsibility and expressed remorse for their actions, a district court cannot *aggravate* a sentence for an individual who does not accept responsibility or express remorse, especially after the defendant has gone to trial. Here, the record indicates that the district court impermissibly punished Werth for going to trial and refusing to admit guilt. Over and over when imposing sentence, the district court

lamented Werth's failure to "accept[] responsibility for anything," that he "still maintains his innocence," and that he "ha[dn't] displayed" "some remorse."

III.    This Court should also reverse and remand for resentencing because of errors in the supervised release conditions.

The district court committed "*Rogers* error,"[7] *i.e.*, by entering a written judgment that conflicts with the district court's oral sentencing pronouncement.  In particular, the written judgment conflicts with the oral pronouncement in two ways.  First, the written judgment states that a $400 special assessment is a condition of supervised release, but the judge did not orally state that the assessment was a term of supervised release.  Second, the district court (in effect) announced that Werth would have to report to the probation office "in the federal district court where . . . is authorized to reside," but the written judgment confusingly states both that Werth must report to the probation office in the district where he is "authorized to reside," but also "in the district to which [Werth] is released."  That second clause is both inconsistent with the oral pronouncement and creates an internal conflict in the written judgment.

The district court also erred in banning Werth from all use of alcohol.  This is a non-standard condition, meaning it must be reasonably related to the facts of the

---

[7] *Rogers*, 961 F.3d 291.

case.  In this case, there is no evidence that alcohol contributed to the offense or that Werth suffers from alcoholism.  And the district court did not even attempt to justify this condition.  It was unreasonable for the district court to, in effect, ban Werth from using an otherwise lawful substance for the rest of his life under such circumstances.

## ARGUMENT

### I.  Werth was entitled to a judgment of acquittal on Count 3.

In Count 3, Werth was charged with coercing and enticing a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).  Crucially, the indictment identified a specific illegal sexual activity—production of child pornography—and also only charged Werth with a completed offense, not an attempt.  At trial, the Government presented no evidence that the complaining witness in Count 3 actually engaged in any sexually explicit activity for the purpose of producing child pornography in response to Werth's requests or that she even agreed to engage in such activity.  The Court should vacate Werth's conviction on Count 3 and remand for resentencing.

### A.  Standard of Review

Werth moved for a judgment of acquittal at the end of the Government's case and then later renewed his motion (J.A.566, 605), thus preserving this issue.  *See United States v. Barrett*, 102 F.4th 60, 71 (2d Cir. 2024); *United States v. Watkins*,

111 F.4th 300, 307-08 (4th Cir. 2024); *United States v. Johnson*, 600 F. App'x 872, 877 n.4 (4th Cir. 2015).

This Court reviews a challenge to the sufficiency of the evidence de novo. *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015). When assessing sufficiency, the Court should "view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) (citation omitted).

**B.     The Government had to prove that Werth enticed the complaining witness to engage in sexually explicit activity for the purpose of producing an image.**

Given the indictment's language, the Government had to prove that the complaining witness (E.A.D.) actually engaged in sexually explicit conduct in order to produce child pornography as a result of Werth's coercion or enticement or, at the very least, that that E.A.D. agreed to engage in such conduct as a result of Werth's coercion or enticement.

In Count 3, Werth was charged with a violation of 18 U.S.C. § 2422(b). J.A.20. That statute, entitled "Coercion and enticement," states in relevant part: "Whoever . . . knowingly persuades, induces, entices, or coerces [a minor] to engage in prostitution or any sexual activity for which any person can be charged with a

criminal offense, or attempts to do so," is guilty of a crime. *Id.* The offense contains

four elements:

1) use of a facility of interstate commerce;

2) to knowingly persuade, induce, entice, or coerce; [8]

3) a minor;

4) to engage in illegal sexual activity.

*United States v. Kincherlow*, 88 F.4th 897, 903 (11th Cir. 2023); *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005); *see also United States v. Cesiro*, No. 23-6649, 2024 WL 4647667, at *3 (2d Cir. Nov. 1, 2024).

The indictment against Werth narrowed the elements the Government needed to prove in this case in two ways. First, the indictment charged Werth only with the substantive offense, *not* attempt. "[T]here are two prongs to the statute [§ 2422(b)], one for a completed violation and the other for an attempted violation." *United States v. Kemache-Webster*, 497 F. App'x 339, 342-43 (4th Cir. 2012); *see also Kincherlow*, 88 F.4th at 903 n.5 (recognizing the distinction between "the substantive offense proscribed by § 2422(b)" and "attempting to violate § 2422(b)"). The indictment does not utilize any language charging Werth with attempt. J.A.20. And the jury was never instructed on attempt. *See* J.A.27-90, 112-13, 566-99.

---

[8] As a shorthand, this brief will refer to the *mens rea* requirement as "coercion or enticement," as that is the title of the statute.

Second, the indictment specifically identified the alleged illegal sexual activity. In particular, the Government alleged that Werth coerced or enticed E.A.D. "to engage in . . . production of child pornography, in violation of 18 U.S.C. § 2251(a)." J.A.20; *see United States v. Macaluso*, 460 F. App'x 862, 867 (11th Cir. 2012) (noting that § 2251(a) and § 2422(b) can criminalize the same conduct).[9] The indictment does not identify any other alleged illegal activity, nor does it generically allege that Werth enticed or coerced the complaining witness to engage in "any sexual activity for which any person can be charged with a criminal offense." *See* J.A.20.

To prove that Werth actually coerced or enticed E.A.D. to engage in the charged illegal activity, the Government had to prove that Werth persuaded E.A.D. to engage in sexual activity designed to actually *produce* a visual depiction (*i.e.*, a photograph or video)—the mere exchange of illicit imagery is insufficient as a matter of law. "Section 2251(a) applies only to the actual production of child pornography; other statutes—not charged in this case—proscribe distribution [or possession]." *Broxmeyer*, 616 F.3d at 124. Thus, § 2251(a) conviction requires proof that the defendant "induced [the complainant] to *produce*, not just *send*, sexually explicit photographs of herself." *Rogers v. United States*, 596 F. App'x

---

[9] The production of child pornography qualifies as "sexual activity" for purposes of 18 U.S.C. § 2422. 18 U.S.C. § 2427.

490, 494 (7th Cir. 2014). Stated otherwise, evidence that a minor sent a sexually explicit photograph to a defendant, without more, does not prove child pornography production. *Broxmeyer*, 616 F.3d at 124-26; *Palomino-Coronado*, 805 F.3d at 130 ("It is simply not enough to say the photo speaks for itself and for the defendant and that is the end of the matter." (cleaned up)). Those images may have been preexisting or taken for reasons unrelated to any enticement by the defendant, and thus do not qualify as production.

*Broxmeyer*, 616 F.3d 120, is an example of this rule. There, the Second Circuit found insufficient evidence to support a production charge where, although there was evidence the minor sent the defendant sexually explicit photographs of herself, there was no evidence about *when* she created those photographs. *Id.* at 125-27. Without evidence about "whether [the photos] were taken before or after [the defendant] solicited photos of her," there was no evidence that the defendant actually enticed production. *Id.* at 126.

This court recently reached a very similar conclusion in *United States v. Avila*, 134 F.4th 244 (4th Cir. 2025). There, the question was whether an analogous guidelines provision for "causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" applied to the defendant's conduct where the defendant paid a victim for sexually explicit videos. *Id.* at 246. The Court held that, in order for the guideline to apply, the Government

had to prove that the defendant's "requests were what prompted the victims to make" the videos. *Id.* at 246-47. In other words, the guideline applied only if there was a factual finding that the victim "made a video after" and "in response to" the defendant's requests. *Id.* at 247. As applied to the facts of the case, mere evidence that the defendant paid for and received the videos was insufficient to meet this standard. *Id.* at 247-48.

This Court's decision in *United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001) is entirely consistent with *Broxmeyer* and *Avila*. In that case, the defendant took a minor to a motel room, set up a video camera, and engaged in sexual intercourse with her. *Id.* at 325-26. The defendant intended to produce a visual depiction of this sexual activity but, unbeknownst to him, the video camera did not actually capture the encounter. *Id.* at 326. On appeal, the defendant argued he could not be convicted under § 2251(a) because no visual depiction was actually produced. *Id.* at 327-28. This Court rejected that argument, concluding that "the federal crime charged . . . was complete when Buculei induced [the minor] into sexually explicit conduct for the purpose of producing a visual depiction thereof." *Id.* at 328. So, although a completed visual depiction is not required, *Buculei* still mandates that the minor actually engage in sexually explicit conduct and that it is the defendant's enticement that prompted the minor to engage in the explicit conduct that was aimed at leading to production.

Thus, *Buculei*, *Avila*, and *Broxmeyer* stand for the same proposition: to show that the production of child pornography in violation of § 2251(a) has occurred, the evidence must show that the defendant's actions caused a minor to actually engage in sexually explicit conduct for the purpose of producing a visual depiction. Thus, to convict Werth under Count 3, which charged him with coercing or enticing E.A.D. into engaging in a § 2251(a) violation, the Government needed to show that Werth's coercion or enticement actually induced E.A.D. "to engage in," § 2422(b), "sexually explicit conduct for the purpose of producing a visual depiction thereof," *Buculei*, 262 F.3d at 328.

### C.   The Government failed to present sufficient evidence on Count 3.

The Government failed to meet its burden on Count 3 because it failed to present sufficient evidence that the complaining witness ever actually engaged in sexual activity to produce an image in response to Werth's supposed enticement or that even that Werth secured her agreement to do so.

The Government had no direct evidence of any actual enticement or production. E.A.D. did not testify. *See* J.A.234, 315, 539, 633. Thus, there was no direct testimony that she was in fact coerced or enticed by Werth to produce a sexually explicit photograph (or other visual depiction) for him, that she ever engaged in sexually explicit conduct to produce a photograph for Werth, that she

ever did in fact produce any explicit visual depiction, or that she even agreed to engage in these actions for him.

The Government did submit records showing the chats between Werth and E.A.D. on Snapchat, but those messages do not contain sufficient evidence of production either. *See* J.A.450-56, 777-88. In the messages that the Government submitted, E.A.D. never actually sent Werth any photographs. *Id.* The only sexually explicit images related to E.A.D. were shared *from* Werth to E.A.D., not the other way around. When talking to E.A.D., Werth showed her that he had a folder containing two sexually explicit photographs of her. J.A.452, 781, 789. But, as noted above, the mere existence of a photograph, without more, does not prove production of child pornography. *See Broxmeyer*, 616 F.3d at 125-27; *Avila*, 134 F.4th at 247; *Palomino-Coronado*, 805 F.3d at 130. There was no evidence about how, when, or why these images came into Werth's possession. *See* J.A.450-56, 777-88. In particular, there was no evidence that E.A.D. purposefully produced these photographs in response to Werth's enticement, as opposed to E.A.D. sending Werth preexisting photographs that she had taken for other men or for herself and then later shared with Werth. As explained in *Broxmeyer*, that lack of evidence is fatal. 616 F.3d at 125-27.

The actual content of the conversation between Werth and E.A.D. also fails to show that Werth coerced or enticed E.A.D. into actually engaging in any illicit

sexual activity for the purpose of producing a visual depiction. When Werth first asked if E.A.D. had "any new nude pics," she said "no." J.A.451, 781. Later, Werth asked E.A.D. if she would "hook [him] up the next time [she] take[s] nude pics." J.A.452-53, 782. But there is no evidence that E.A.D. ever actually did "hook him up" with any photographs. *See* J.A.450-56, 777-88. And, even if there was such evidence, the Government would have to show that Werth's coercion or enticement was the *reason* the image was produced. If E.A.D. had taken photos for herself or someone else and then just sent a copy to Werth, then there was insufficient evidence to show child pornography *production*, as opposed to possession or possibly distribution. *See Broxmeyer*, 616 F.3d at 125-27. Indeed, there was evidence that E.A.D. had sent sexually explicit photographs to other men.[10] And while Werth at one point suggested the two of them have a video conversation in the future, there is no evidence that any subsequent video meetup ever occurred or, that if it had, it involved sexually explicit conduct. J.A.455, 783.

Some cases suggest a completed § 2422 violation occurs when the defendant has actually "enticed" a minor into agreeing to engage in illegal activity, even if the minor does not ultimately engage in any illegal activity. *E.g.*, *Kemache-Webster*, 497 F. App'x at 343; *United States v. Fuller*, 77 F. App'x 371, 378 (6th Cir. 2003).

_____

[10] E.A.D. told Werth that another "guy made a folder of me [her nude photographs] but doesn't talk to me." J.A.453, 782.

That interpretation violates the plain language of § 2422, which requires coercion or inducement "*to engage in . . .* sexual activity." 18 U.S.C. § 2422 (emphasis added). To "engage" in something means to "involve oneself" or "to take part in," *Engage*, Black's Law Dictionary (12th ed. 2024), thus requiring active participation in the activity, not just mere agreement to do so. And a broad interpretation of § 2422(b) permitting conviction upon a mere showing of an agreement appears especially inapt here, where the indictment specifically cross-references and incorporates the § 2251(a) child pornography production statute, and that statute requires a minor to actually engage in sexually explicit activity. *See Buculei*, 262 F.3d at 328 (noting that a § 2251(a) offense is "complete" when a defendant "induce[s a minor] into sexually explicit conduct for the purpose of producing a visual depiction thereof").

But even if the Government needed to only show that E.A.D. merely agreed to engage in sexual activity for the purpose of producing a visual depiction but not that she actually engaged in any such conduct, the evidence was insufficient for even *that*. Again, E.A.D. did not testify. So, she did not, for example, say that she agreed to engage in sexually explicit conduct for the purpose of producing a photograph for Werth. Her statements in the chat messages also cannot satisfy this element. Although E.A.D. responded "yeaa" when Werth asked if she would "hook [him] up the next time [she] take[s] nude pics" (J.A.452-53, 782), that is insufficient for two reasons. For one, it is unclear that merely giving such a vague affirmation, especially

without any evidence that E.A.D. actually followed through on this statement, would satisfy the enticement requirement—particularly given that the rest of the conversation indicates E.A.D. was not particularly interested in engaging with Werth. Additionally, Werth's request applies equally to images E.A.D. took for *any* reason, including reasons unrelated to his supposed coercion or enticement.

More problematically for the Government's case, however, is that E.A.D.'s response cannot be taken for the truth of the matter asserted, *i.e.*, that she was in fact agreeing to send explicit photographs in the future. E.A.D.'s side of the chats with Werth were *not* introduced for the truth of the matter asserted. J.A.107-08, 114, 154, 160-62, 174-77, 437, 525, 575. Indeed, the Government admitted that whether E.A.D.'s statements were true was irrelevant because they were not offered for their truth. J.A.111 ("[Government]: Whether the girls' statements were true is of no moment."); J.A.154 ("[Government:] we're not offering anything for the truth from the perspective of the girls."). Because E.A.D.'s statements were not introduced for their truth, they cannot be considered "as substantive evidence of [Werth's] guilt." *United States v. Eddy*, 597 F.2d 430, 434 n.9 (5th Cir. 1979), *abrogation on other grounds suggested in Gibson v. Collins*, 947 F.2d 780 (5th Cir. 1991); *see also United States v. Kent*, 93 F.4th 1213, 1216 (11th Cir. 2024) (noting that, where evidence was admitted "for the effect it had on the listeners and not for the truth of the matter asserted," those out-of-court statements could not be considered "as

substantive evidence of [the defendant's] guilt"); *Glenn v. United States*, 271 F.2d 880, 882-83 (6th Cir. 1959) (holding that certain statements were only admissible for a non-substantive purpose and that, without those statements, the evidence was insufficient). Thus, there is no substantive evidence that Werth actually obtained any agreement from E.A.D. to produce photographs for him.

That the evidence was insufficient on Count 3 is bolstered by comparing the evidence on that count to the evidence as to Counts 1 and 2. In both of those counts, Werth was charged with production of child pornography in violation of § 2251(a). J.A. 18-19. For Count 2, the complaining witness actually testified at trial, and she explicitly said that she created sexually explicit imagery in response to Werth's requests. J.A.478-79. And, for Count 1, although the complaining witness did not testify, the Government introduced much more fulsome evidence from which a rational jury could infer production. In particular, the Government submitted evidence that J.B. sent Werth approximately 100 sexually explicit photographs and videos. J.A.436, 793. And there was circumstantial evidence from which a jury could infer at least one of those photographs was produced in response to Werth's persuasion. Not only did the Government present hundreds of lines of explicit chat messages between Werth and J.B. (J.A.412-36),[11] the Government also introduced

---

[11] The chats between Werth and E.A.D. were much shorter and more limited. *Compare* J.A.412-36, *with* J.A.450-56.

evidence that Werth purchased lingerie for J.B. and that some of the sexually explicit photographs depicted J.B. wearing that precise lingerie (J.A.427-34). This established that at least some photos were taken *after* Werth started trying to entice or persuade J.B. and suggested that J.B. did produce the explicit photos in response to Werth's inducement.

Werth may have committed a crime with respect to E.A.D., but it was not the crime with which he was charged. The Government could have charged Werth with attempting to violate § 2422(b). Or the Government could have charged him with possession of child pornography. But it chose not to do so. Instead, it pursued, in effect, a claim that Werth successfully and completely enticed E.A.D. to engage in sexually explicit activity to produce a photograph. The evidence at trial was wholly insufficient to prove *that* crime.

\* \* \*

The district court erred in denying Werth's motion for a judgment of acquittal as to Count 3. The ordinary course when one of multiple counts is vacated due to insufficient evidence is to remand for resentencing. *E.g. United States v. Belk*, No. 20-4551, 2022 WL 17849372, at \*7 (4th Cir. Dec. 22, 2022) (citing *United States v. Hickman*, 626 F.3d 756, 773 (4th Cir. 2010)); *United States v. Strayhorn*, 743 F.3d 917, 927 (4th Cir. 2014); *United States v. Thomas*, 489 F. App'x 688, 694-95 (4th Cir. 2012); *United States v. Williams*, 89 F.3d 165, 168 & n.4 (4th Cir. 1996). This

is true even when the sentences on both the vacated and unvacated counts are concurrent. *Williams*, 89 F.3d at 168 & n.4; *United States v. Bryce*, 208 F.3d 346, 349-50, 356 (2d Cir. 1999); *United States v. Dean*, 55 F.3d 640, 667 (D.C. Cir. 1995); *see generally United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017) (noting that a sentencing court must employ a "holistic approach" that is "inherently interrelated" and "interconnected" when sentencing a defendant on multiple counts) (citations omitted). For these reasons, this Court should vacate Count 3 and remand for resentencing and for amendment of the judgment. *United States v. Dodt*, No. 20-4115, 2021 WL 6118162, at *4 (4th Cir. Dec. 27, 2021).

## II. The district court impermissibly punished Werth for exercising his constitutional rights.

When explaining the basis of the sentence, the district court relied heavily on Werth's decision to maintain his innocence and failure to accept responsibility or show remorse in light of the purportedly overwhelming evidence of guilt. The district court's reasoning impermissibly violated Werth's constitutional right to go to trial and his privilege against self-incrimination. This Court should reverse and remand for resentencing before another judge.

### A. District courts cannot appear to rely on impermissible factors at sentencing.

"When the sentencing court considers an impermissible factor in calculating a defendant's sentence, a reviewing court will vacate and remand for resentencing."

*United States v. Cabrera*, 811 F.3d 801, 808 (6th Cir. 2016) (citation omitted); *see also United States v. Grant*, No. 21-4344, 2021 WL 5412343, at *1 (4th Cir. Nov. 19, 2021) ("A district court may impose an unreasonable sentence by relying on an improper factor when selecting a defendant's sentence."); *United States v. Bakker*, 925 F.2d 728, 740-41 (4th Cir. 1991); *United States v. Maples*, 501 F.2d 985, 987 (4th Cir. 1974).

Although there appears to be a circuit split over whether an improper sentencing consideration constitutes a procedural or substantive sentencing error, [12] the characterization ultimately does not matter. Regardless of whether the error "is categorized as being procedural, substantive, or a combination of the two," the consideration of an improper sentencing factor requires reversal. *Cabrera*, 811 F.3d at 809 (citation omitted).

The Court should reverse not only when it is clear the district court actually relied on an improper sentencing consideration, but also whenever the district court's comments gave the "appearance" of such. "Justice must satisfy the appearance of

---

[12] *Compare Cabrera*, 811 F.3d at 808-09 and *United States v. Burnette*, 518 F.3d 942, 949 (8th Cir. 2008) ("[The defendant] argues that the district court considered an improper factor [at sentencing] . . . This is a claim of procedural error[.]" (cleaned up)), *with United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2010) ("[A] sentence may be rendered substantively unreasonable if the district court relied on an improper consideration during sentencing."); *United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th Cir. 2015) ("If the district court relies on an improper factor, a sentence may be substantively unreasonable."); *see also United States v. O'Connor*, 567 F.3d 395, 397 & n.3 (8th Cir. 2009) (noting the lack of clarity on this issue).

justice." *United States v. Leung*, 40 F.3d 577, 586 (2d Cir. 1994) (citations omitted); *see also Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 888 (2009) ("A judge shall avoid impropriety and the appearance of impropriety." (citations omitted)); *United States v. McCall*, 934 F.3d 380, 384 (4th Cir. 2019) ("We must seek to avoid both actual bias and the mere appearance of bias."); *State v. Scalf*, 710 N.E.2d 1206, 1211 (Ohio Ct. App. 1998) ("[C]ourts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof."). For example, this Court reversed and remanded for resentencing where it was "left with the *apprehension* that the imposition of a lengthy prison term here *may have* reflected" an impermissible sentencing consideration (namely, the judge's personal religious views). *Bakker*, 925 F.2d at 740-41 (emphases added). Similarly, this Court reversed and remanded for resentencing where the Court found "that the judge's comments *might* lead an objective observer to question the judge's impartiality." *United States v. Mikalajunas*, 974 F.2d 1333, *1 (4th Cir. 1992) (emphasis added). Where the record leaves "a reasonable apprehension of vindictiveness," resentencing is appropriate. *Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir. 1982).

**B.** **Increasing a sentence due to the defendant's failure to take responsibility or express remorse is unconstitutional.**

It is black letter law that a judge cannot punish someone for exercising their Sixth Amendment right to go to trial or their Fifth Amendment privilege against self-incrimination.

"'[P]enalizing those who choose to exercise' constitutional rights" is "'patently unconstitutional.'" *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) (quoting *United States v. Jackson*, 390 U.S. 570, 581 (1968)). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

An application of this principle is that a judge cannot, through her sentence, punish the defendant for going to trial. It is "well established under the so-called unconstitutional conditions doctrine that a defendant may not be subjected to more severe punishment for exercising his or her constitutional right to stand trial." *United States v. Hernandez*, 894 F.3d 1104, 1110 (9th Cir. 2018) (quoting *United States v. Saunders*, 973 F.2d 1354, 1362 (7th Cir. 1992)). "Enhancing a sentence solely because a defendant chooses to go to trial risks chilling future criminal defendants from exercising their constitutional rights." *Id.* at 1112. "And imposing a penalty for asserting a constitutional right heightens the risk that future defendants will plead guilty not to accept responsibility, but to escape the sentencing court's wrath." *Id.*

A judge's focus at sentencing on a defendant's so-called "lack of remorse" or "failure to take responsibility" after the defendant has chosen to exercise his constitutional right to trial can violate the Sixth Amendment. "A trial judge may not penalize a defendant for not admitting guilt and expressing remorse once the jury has found him guilty." *Williams v. United States*, 293 A.2d 484, 486 (D.C. 1972) (citations omitted). Or, stated otherwise, "a party's decision to exercise his or her right to jury trial cannot be viewed as a showing of lack of remorse." *Moorer v. State*, 926 So.2d 475, 477 (Fla. App. Ct. 2006). For example, the Ninth Circuit reversed a sentence where the district court repeatedly lamented the lack of "remorse" from a defendant who exercised his constitutional right to trial. *Hernandez*, 894 F.3d at 1110-12. Similarly, the D.C. Circuit reversed a sentence where, at sentencing, the judge commented that "you don't even have any remorse for your actions . . . You are still protesting that you didn't do it[.]" *United States v. Hopkins*, 464 F.2d 816, 822 (D.C. Cir. 1972). The Court explained this was improper: "appellant was not bound to yield a constitutional right only to be punished for not doing so." *Id.* And an Ohio appellate court reversed a sentence due to an improper trial tax when the judge said "[y]ou don't get the same kind of leniency you would have gotten if you had just fessed up, **taken responsibility** and said, okay, I got caught, I screwed up, now what's my prison sentence." *State v. Noble*, 2015 WL 758905, \*2-\*3 (Ohio Ct. App. Feb. 23, 2015) (emphasis added).

Improper focus on a failure to show remorse or take responsibility can also violate the Fifth Amendment's privilege against self-incrimination. Take *United States v. Whitson*, 77 F.4th 452 (6th Cir. 2023). There, the defendant submitted a letter to the court in which he expressed some remorse, for example, expressing a desire to "right his past wrongs." *Id.* at 458 (cleaned up). In sentencing the defendant, the district court "expressed its belief that there could be no true rehabilitation without remorse, and there could be no remorse without an admission of guilt." *Id.* at 455-56. The Sixth Circuit reversed, explaining that the district court could not "consider[] Whitson's refusal to admit guilt when fashioning his sentence." *Id.* at 459. The district court's reasoning ran afoul of "Whitson's exercise of his Fifth Amendment right against self-incrimination." *Id.*[13]

It is true that remorse can be considered in certain circumstances. Particularly, it is not impermissible to consider a defendant's remorse or taking of responsibility when deciding whether to *reduce* a sentence. That is why the 2-level-reduction in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1 is

---

[13] This decision is mandated not only by the Constitution, but also makes practical sentence. Defense counsel frequently advises their client to avoid making statements during sentencing that could "imperil" their appeal or postconviction petitions. *Whitson*, 77 F.4th at 458. Thus, the failure to express remorse or take responsibility at sentencing may not truly reflect a lack of remorse, but rather a defendant's decision to adhere to his counsel's advice.

constitutional.  *E.g.*, *United States v. Trujillo*, 906 F.2d 1456, 1461 (10th Cir. 1990);

*see also United States v. Carpenter*, 996 F.2d 1213, at *2 (4th Cir. 1993).

However, it is impermissible to take into consideration those factors to

*enhance* or *aggravate* a sentence.  There is a "distinction between increasing the

severity of a sentence for a defendant's failure to cooperate and refusing to grant

leniency."  *United States v. Stratton*, 820 F.2d 562, 564 (2d Cir. 1987).  "It is one

thing to extend leniency to a defendant who is willing to cooperate with the

government; it is quite another thing to administer additional punishment to a

defendant who by his silence has committed no additional offense."  *Id.* (citations

omitted); *see also Scalf*, 710 N.E.2d at 1210-11 ("[T]he augmentation of sentence

based upon a defendant's decision to stand on his right to put the government to its

proof rather than plead guilty is improper." (citing, *inter alia*, *United States v.

Araujo*, 539 F.2d 287 (2d Cir. 1976)).  In short, there is a crucial "distin[ction]

between generally permissible denied benefits and impermissible punishment in this

context."  *Whitson*, 77 F.4th at 460.

Admittedly, this can be a hard line to draw.  Courts have called the distinction

between affording leniency to a defendant who has admitted guilt and punishing

someone who denied guilt and proceeded to trial "a fine line,"[14] "a subtle"

---

[14] *Whitson*, 77 F.4th at 457.

distinction,[15] and "elusive."[16]  But the fact remains that, even with difficult line-drawing problems, there is indeed a "'line between responding favorably to an individual's sincere expression of remorse, and reacting in a hostile way because of a personal belief in the guilt of one' who insists on putting the government to its proof."  *Coles v. United States*, 682 A.2d 167, 169 (D.C. 1996) (quoting *Scott v. United States*, 419 F.2d 264, 282 (D.C. 1969) (Leventhal, J., concurring)).

### C.  The district court's comments here about Werth's decision to maintain his innocence, failure to accept responsibility, and failure to show remorse violated his constitutional rights.

The sentence imposed by the district court here falls "on the wrong side of that line" between permissible leniency and impermissible punishment for the exercise of constitutional rights.  *Whitson*, 77 F.4th at 457.  The district court's comments indicate that it was not merely "withholding" a benefit, but rather *punishing* Werth—*i.e.*, increasing the sentence it otherwise deemed appropriate—because Werth decided to go to trial, rather than admitting his guilt or expressing remorse in the precise way the judge desired.  The record reflects this in several ways.

For one, the judge *repeatedly* relied on Werth's maintenance of his innocence, failure to take responsibility, and failure to express remorse.  Werth did not seek a

---

[15] *Moorer*, 926 So.2d at 477.

[16] *Coles v. United States*, 682 A.2d 167, 169 (D.C. 1996).

two-level reduction of responsibility under U.S.S.G. § 3E1.1.   *See* J.A.795.

Accordingly, there was no reason to discuss his lack of remorse or acceptance of responsibility at all, unless the district court thought it was relevant to the length of sentence to otherwise impose.  Yet, the district court mentioned these factors at least eight separate times at sentencing.  J.A.728, 747-48, 751, 757-58.  Indeed, it was the last point the district court made when imposing sentence.  J.A.757-58.  And this reasoning was the predominant reason expressed by the judge for imposing the sentence that he did.  *See* J.A.743-49.  The prevalence of the district court's reliance on remorse, responsibility, and innocence strongly suggests impermissible aggravation of the sentence because Werth exercised his Fifth and Sixth Amendment rights.

Not only did the district court repeatedly emphasize Werth's failure to waive his innocence, take responsibility, or express remorse, but the district court made specific comments tying these factors to Werth's refusal to plead guilty (a Sixth Amendment violation) and his refusal to make particular statements (a Fifth Amendment violation).  For example, the Judge specifically mentioned that one of the complaining witnesses had to testify[17]—a direct reference to Werth's Sixth

---

[17] The district court stated: "Even without admitting guilt, [Werth] *certainly could have expressed some* sympathy or some consciousness of what the victims, **including the one who testified at trial**, have gone through."  J.A.747-48. (emphases added)).

Amendment rights to go to trial and confront the witnesses against him. *See Hernandez*, 894 F.3d at 1110-11 (reversing sentence where judge said he wanted the defendant to show remorse, especially since he put a "young girl . . . through the agony of testifying"). Further, the district court lamented Werth's decision to maintain his innocence even in the face of "overwhelming evidence of guilt." J.A.747. This comment reflects the district court's belief that, in light of the so-called overwhelming evidence, Werth should not have gone to trial. But "it is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, **no matter how overwhelming the evidence of his guilt**." *United States v. Frost*, 914 F.2d 756, 774 (6th Cir. 1990) (emphasis added) (citation omitted); *see also Holton v. State*, 573 So.2d 284, 292 (Fla. 1990) ("The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt."). The only reason for the district court to even mention the weight of the evidence against Werth, especially immediately before criticizing Werth for not "express[ing] some sympathy or some consciousness of what the victims . . . have gone through," was to punish Werth for invoking his constitutional right to trial in a

case that the judge thought should have resolved via plea. J.A.747-48.[18]

The district court's reaction to Werth's allocution further indicates that the district court imposed a lengthy sentence because of Werth's failure to specifically admit guilt. In his allocution, Werth *did* express remorse. He acknowledged that he had "an addiction," that he "rationalized all of [his] negative behaviors," that he "had an excuse for everything," and that he "willingly put [himself] in very dangerous situations" because he was "reckless[] and impulsive[]." J.A.742. Werth explained that he was working on an "action plan" to get better and "improve [his] behavior and skills." J.A.742. Twice, he said he "hope[s] to make amends." J.A.742. Yet, the district court kept chastising Werth for failing to express remorse and take responsibility because the judge wanted Werth to admit his guilt and express sympathy for the victims. As the Sixth Circuit explained in Whitson, it is unconstitutional for a judge to impose "a longer sentence than he would have if he had expressed remorse in the way that the court wished—which was by admitting

---

[18] Appellant disputes that the evidence was overwhelming. If Werth had been charged with mere possession or distribution, then arguably the evidence would have been overwhelming. But the Government sought to prove Werth's guilt of *production* of child pornography. As explained in Point I, the evidence of production was far from overwhelming; indeed, White maintains that there was insufficient evidence as to one of the counts. White was entitled to go to trial to challenge the Government's overcharging of this case. *See generally Duncan v. Louisiana*, 391 U.S. 145, 155 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government.").

guilt." *Whitson*, 77 F.4th at 459.

**D.    This error requires resentencing before a different judge, regardless of the appropriate standard of review.**

Werth sufficiently preserved this issue by arguing for a sentence lower than the one ultimately imposed (and lower than the Guidelines range). *United States v. Powell*, 650 F.3d 388, 395 (4th Cir. 2011) ("[A]rguments made under § 3553(a) for a sentence different than the one that is eventually imposed are sufficient to preserve claims...." (quoting *United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010)); *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010). Werth had no obligation to object to the district court's reasoning and sentence after it was imposed. *Lynn*, 592 F.3d at 578 (rejecting a "requirement of formulaic 'exceptions'-after the fact-to court rulings"). This Court does "not require a litigant to complain about a judicial choice after it has been made." *Id.* (quoting *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009)). Accordingly, this issue should be reviewed for abuse of discretion. *See Lynn*, 592 F.3d at 576. A district court abuses its discretion when it violates a defendant's constitutional rights or relies upon an improper sentencing factor. *Bakker*, 925 F.2d at 738, 740.

Even if Werth had not preserved the issue, the Court should still reverse under the plain error standard. A district court's consideration of an improper sentencing factor constitutes plain error. *Whitson*, 77 F.4th at 454, 461-62; *Cabrera*, 811 F.3d at 808; *see also United States v. Perez*, No. 24-1492, 2025 WL 545706 at *1-*3 (3d

Cir. Feb. 19, 2025) (reliance on improper consideration during supervised release sentencing constituted plain error); *United States v. Pennington*, No. 21-4664, 2022 WL 2702577, at *2 (4th Cir. July 12, 2022) (same).

And all elements of plain error are met here. *See United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) ("To succeed under plain error review, a defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights."). There was error, and it was plain, as it is "perfectly clear" that a trial court cannot punish someone for exercising "a 'fundamental trial right.'" *Whitson*, 77 F.4th at 461; *see also Pearce*, 395 U.S. at 724 (noting that the punishment of a defendant for choosing to exercise his constitutional rights is "patently" unlawful). And the error affected Werth's "substantial rights" in at least two ways. For one, it affected Werth's substantial right to a fair sentencing process. Criminal defendants have a right "to be sentenced pursuant to § 3553(c)," which requires reasons that are "*permissible* (and not, inter alia, violative of a defendant's constitutional rights)." *Cabrera*, 811 F.3d at 813. Accordingly, a defendant's "substantial right to be sentenced pursuant to § 3553(c)" is violated where "a district judge bases a sentence . . . on factors . . . that violate a defendant's basic constitutional rights." *Id.* at 814. Additionally, because the district court's consideration of an improper sentencing consideration "directly affected the length

of the sentence the district court imposed upon him," it "therefore affected [Werth's] substantial rights and the fairness of his sentencing." *Whitson*, 77 F.4th at 46.

\* \* \*

Given the district court's improper reliance on Werth's exercise of his constitutional rights, the court should reverse and remand for resentencing. To preserve the appearance of impartiality, the resentencing should be before a different judge. *McCall*, 934 F.3d at 384-85; *Bakker*, 925 F.2d at 741; *United States v. Mikalajunas*, 974 F.2d 1333, \*4 (4th Cir. 1992); *Longval*, 693 F.2d at 238-39; *United States v. Diamond*, 561 F.2d 557, 559 (4th Cir. 1977).

## III. Werth is entitled to resentencing due to errors in the supervised release conditions.

The district court committed two distinct errors with respect to the supervised release conditions. First, the district court committed a "*Rogers* error" by including in the written judgment supervised release conditions that were not orally pronounced at sentencing. This error affected two supervised release conditions, related to the $400 special assessment and reporting to probation upon release. Second, the district court erred in imposing, as a condition of supervised release, a total ban on the use of alcohol for effectively the rest of Werth's life, where the district court failed to explain why that condition was reasonably related to the case and there was insufficient evidence in the record justifying that particular condition.

### A. The district court erred in including supervised release conditions in the written judgment that were not orally pronounced.

"A district court must announce all nonmandatory conditions of supervised release at the sentencing hearing." *Reyes*, 2024 WL 4381162, at *1 (citing *Rogers*, 961 F.3d at 295-99). "Discretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities; the defendant has not been sentenced to those conditions, and a remand for resentencing is required." *Id.* (alterations in original) (quoting *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021) (citing *Rogers*, 961 F.3d at 295, 300-01)). This rule applies not only to conditions that appear for the very first time in the written judgment, but also conditions that are modified in the written judgment. "[W]here the description of a condition in an oral sentence d[oes] not match the description of that condition in the written judgment, that error alone is reversible *Rogers* error." *Id.* (alterations in original) (quoting *United States v. Cisson*, 33 F.4th 185, 191 (4th Cir. 2022)). The appropriate remedy for this error is "vacatur of [the] entire sentence and a remand for full resentencing." *Id.* (citing *United States v. Mathis*, 103 F.4th 193, 198-200 (4th Cir. 2024)).

Although Werth did not object to these conditions below, the claims are not reviewed for plain error. *Rogers*, 961 F.3d at 295. "The plain-error standard applies only if a defendant has an opportunity to object in the trial court." *Id.* "Here, nothing occurred at sentencing that would have alerted [Werth] to the possibility that his

written judgment might include unmentioned conditions of supervised release." *Id.* In such cases, courts of appeal "allow a defendant to appeal the allegedly inconsistent judgment without an objection in the district court." *Id.*

Here, the district court committed a "*Rogers* error" in two ways.

1.      The district court erred in imposing the $400 special assessment as a condition of supervised release. When imposing sentence, the district court orally imposed the $400 special assessment as part of the sentence generally. J.A.750. It did *not* state that payment of that special assessment would be a term of supervised release. The PSR also did not recommend making the $400 special assessment a condition of supervised release. J.A.816-18. Yet, the $400 special assessment shows up in the written judgment as a condition of supervised release. J.A.772.

2.      The written judgment also conflicts with the district court's oral pronouncement with respect to where Werth should report upon release. At sentencing, the district court said that it was going to impose the "standard" discretionary conditions of supervised release. J.A.753-54. The standard conditions include the following: "The defendant shall report to the probation office in the federal judicial district **where he or she is authorized to reside** within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame." U.S.S.G. § 5D1.3 (emphasis added); *see also* J.A.816. Werth's written judgment includes this

language, but it also adds that he "shall report to the probation office **in the district to which the defendant is released** within 72 hours of release from the custody of the Bureau of Prisons." J.A.769 (emphasis added). But the district where the defendant is released may not be the same as where he is authorized to reside, rendering the written judgment internally inconsistent and in conflict with the district court's oral pronouncement. This identical error has previously caused this Court to reverse and remand for resentencing. *Reyes*, 2024 WL 4381162, at *1.

## B. The district court erred in banning Werth from all use of alcohol.

The district court also erred in imposing, as a special condition of probation, that Werth completely refrain from the use of alcohol. J.A.770. The court did not, for example, merely ban the "excessive" use of alcohol. *Compare* 18 U.S.C. § 3563(b)(7). Because of the total length of Werth's sentence, this condition effectively bans him from the use of all alcohol—a substance that is usually legal— for the rest of his life. Here, it was error to impose that condition where the district court failed to justify it on the record, especially given that there was no suggestion in the record that Werth suffered from an alcohol problem or that alcohol played a role in the offenses.

A district court cannot impose just any special condition that it wants. "Supervised release conditions must be tailored to the specific case before the court." *United States v. Inman*, 666 F.3d 1001, 1005 (6th Cir. 2012). There must be a

"reasonable relationship" between a supervised release condition and the facts of a case. *United States v. Prendergast*, 979 F.2d 1289, 1293 (8th Cir. 1992).

This is mandated by statute. 18 U.S.C. § 3583(d). Section 3583(d) requires that a term of supervised release be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)," 18 U.S.C. § 3583(d)(1), *i.e.*, related to, for example, the nature and circumstances of the offense or the history and characteristics of the defendant. *See also United States v. Modena*, 302 F.3d 626, 636 (6th Cir. 2002); *Prendergast*, 979 F.2d at 1292-93. Additionally, "the terms of supervised release must not involve a greater deprivation of liberty than is reasonably necessary to effectuate the goals of Congress and the Sentencing Commission." *United States v. Wesley*, 81 F.3d 482, 484 (4th Cir. 1996) (quoting *Prendergast*, 979 F.2d at 1293); *see also* 18 U.S.C. § 3583(d)(2). "A condition with no basis in the record or with only the most tenuous basis, will inevitably violate [the] command that such conditions involve no greater deprivation of liberty than is reasonably necessary." *United States v. Perazza-Mercado*, 553 F.3d 65, 75 (1st Cir. 2009) (quoting *United States v. Pruden*, 398 F.3d 241, 249 (3d Cir. 2005)).

As an application of that principle, appellate courts have repeatedly reversed the imposition of a total ban on alcohol as a supervised release condition where there was "no evidence indicating that [the defendant] suffers from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he

was sentenced." *Prendergast*, 979 F.2d at 1293; *see also, e.g.*, *Inman*, 666 F.3d at 1005; *United States v. Yuvavanich*, 64 F. App'x 49, 51 (9th Cir. 2003); *Modena*, 302 F.3d at 636-37; *United States v. Scherrer*, 444 F.3d 91, 95-96 (1st Cir. 2006); *cf. Wesley*, 81 F.3d at 484 (upholding condition banning use of alcohol where the defendant "had been previously convicted of being intoxicated and disruptive," "had been previously convicted of driving under the influence," and "had just beaten his wife mercilessly (with a steel-toed boot and a lamp) after getting drunk on whiskey and beer").

Here, there was zero evidence that alcohol played a role in the charged offenses. Additionally, the PSR did not reflect any problem with alcohol. To the contrary, the PSR indicated that Werth rarely used alcohol. *See* J.A.805. The court did not explain why it thought a total ban on alcohol was appropriate. J.A.753-54.

Although Werth did not object to the alcohol condition below, its inclusion constitutes plain error. As several courts have recognized, it is "plain error . . . for the district court to require [a defendant] to abstain from using all alcohol because there was no evidence in the record to suggest that he abused alcohol or that alcohol played a role in the commission of his crime." *Yuvavanich*, 64 F. App'x at 51; *see also United States v. Varela-Rivera*, No. 23-50298, 2024 WL 2130595, at *1-*2 (5th Cir. May 13, 2024) ("[W]e conclude the district court plainly erred in imposing a special condition barring Varela-Rivera from drinking alcohol absent any basis in

the record for such a condition."); *Inman*, 666 F.3d at 1003, 1005-07. As the Fifth Circuit has explained, where a district court has imposed a special condition of supervised release where there was "no evidence in th[e] record suggesting" its need and "the district court made no specific factual finding to establish that this special condition was reasonably related to one of the four factors under § 3553(a)," then "the district court's error . . . is plain." *United States v. Alvarez*, 880 F.3d 236, 241 (5th Cir. 2018). And the error effects Werth's substantial rights in multiple ways, including by barring him from using an otherwise lawful substance for the rest of his life[19] and by "creat[ing] a possibly unwarranted perception that" Werth has an alcohol problem.[20] Additionally, Werth's substantial rights have been violated because, in light of the lack of evidence, this the condition would likely be changed or eliminated upon remand,[21] and "supervised release terms also constitute a

---

[19] *Cf. Alvarez*, 880 F.3d at 241 (the improper imposition of a supervised release condition related to mental health treatment affected the defendant's substantial rights because, among other things, it "may require a significant commitment of time").

[20] *Id.*

[21] *Perazza-Mercado*, 553 F.3d at 79 (holding that, where a district court imposed a special condition "without explanation and without any apparent grounding in the record," then "[t]here is a reasonable probability that the court might not have imposed this prohibition if it had not committed the plain procedural error that underlies it").

substantial restraint on liberty."[22]

The Court should remand for the district court to strike this special condition. At the very least, the Court should remand for the district court to explain why this condition was reasonably related to the facts of this case. *See United States v. Thompson*, 509 F. App'x 449, 450, 453 (6th Cir. 2012); *United States v. Maxwell*, 483 F. App'x 233, 240-41 (6th Cir. 2012); *United States v. Reed*, 421 F. App'x 113, 116 (2d Cir. 2011).

## CONCLUSION

This Court should reverse and remand for resentencing before a different judge and to amend the judgment to eliminate Count 3.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

*/s/ Claire Madill*
CLAIRE MADILL
Assistant Federal Public Defender
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
Claire_Madill@fd.org

June 10, 2025

---

[22] *United States v. Herndon*, 807 F. App'x 286, 291 (5th Cir. 2020) (citations omitted).

## REQUEST FOR ORAL ARGUMENT

Counsel respectfully requests oral argument in this case because he believes that it will aid the Court in its decision-making process.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 11,770 words, excluding the portions exempted by Rule 32(f).

*/s/ Claire Madill*
CLAIRE MADILL